**Kelly TURNER, On Her Own Behalf and on Behalf of Victoria Turner, An Infant, Plaintiff,**

v.

**LIVERPOOL CENTRAL SCHOOL, Board of Education of the Liverpool Central School District, and Superintendent John Cataldo, in his official capacity, Defendants.**

No. 5:00–CV–1320FJSDRH.

United States District Court, N.D. New York.

Feb. 11, 2002.

Costello, Cooney & Fearon, LLP, Syracuse, Attorneys for Plaintiff, Samuel C. Young, Esq.

O'Hara & O'Connell, Syracuse, Attorneys for Defendants, Dennis G. O'Hara, Esq., Of Counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiff Kelly Turner, individually and as a guardian for her minor daughter, Victoria, brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 asserting that Defendants violated the First and Fourteenth Amendments to the United States Constitution, as well as Article I of the New York State Constitution, and New York Public Health Law § 2164. In particular, Plaintiff contends that Defendants violated her Constitutional rights and those of her minor daughter by failing to provide a religious exemption from New York State's immunization requirement pursuant to § 2164(9).

## II. BACKGROUND

New York Public Health Law § 2164 mandates that children receive immunizations before public schools are permitted to admit them.[1] There are two narrow exceptions to this requirement, only one of which is relevant to this action. That exception allows a child to enter public school without immunization if that child's parents "hold *genuine* and *sincere* religious beliefs" which are contrary to the practice of immunization. *See* N.Y. Pub. Health Law § 2164(9) (emphasis added). Plaintiff and her daughter are members of the Congregation of Universal Wisdom ("Congregation"), and the practice of immunization is contrary to Plaintiff's religious beliefs.

Before registering her daughter for kindergarten, Plaintiff notified the Liverpool School District ("District") that she was religiously opposed to the introduction of any foreign material into the human body and, therefore, sought a religious exemption from New York State's immunization requirement.[2] *See* Complaint at ¶ 11. After questioning Ms. Turner, the District determined that the Congregation was not a genuine religion and that although Ms. Turner's beliefs regarding immunization were sincere, they were founded upon a personal philosophy rather than a legitimate religion.[3] As a result, Victoria Turner did not attend kindergarten in the Fall of 1999.

Subsequently, Plaintiff appealed this second rejection to the Board of Education ("Board"). The Board heard arguments on July 11, 2000, and voted to deny Plaintiff's appeal. On July 19, 2000, Plaintiff appealed the Board's decision to the New York State Commissioner of Education and requested a stay of the District's order during the pendency of the case. The Commissioner denied the stay, and Plaintiff eventually withdrew her appeal to the Commissioner of Education.

On August 29, 2000, Plaintiff sought a preliminary injunction allowing her daughter to remain in school during these proceedings.[4] The Court held a hearing on the preliminary injunction and in its decision the Court found that although the religious congregation to which she claimed allegiance was questionable, Plaintiff established a likelihood of success on the merits because "the religious views she

---

1. New York Public Health Law § 2164(2) provides that

 [e]very person in parental relation to a child in this state shall have administered to such child an adequate dose or doses of an immunizing agent against poliomyelitis, mumps, measles, diphtheria, rubella, varicella, Haemophilus, influenzae type b(Hib) and hepatitis B, which meets the standards approved by the United States public health service for such biological products, and which is approved by the department under such conditions as may be specified by the public health council.

 *See* N.Y. Pub. Health Law § 2164(2) (McKinney 2001).

2. More specifically, Plaintiff believes in a Universal Life Force, which is the manifestation of God in all things. *See* Pl's Memorandum of Law at 3. According to Plaintiff, immunization interferes with the transmission of the life force and disrupts one's natural balance and, therefore, one's ability to receive the life force. *See id.* In addition, Plaintiff believes that immunization violates the sanctity of the body. *See id.*

3. Defendant Superintendent John Cataldo sent Plaintiff a letter, dated August 13, 1999, denying Plaintiff's request for a religious exemption. Superintendent Cataldo wrote that it was the District's position that Plaintiff's belief was "based on science and/or philosophy, and not religion." *See* Pl.'s Memorandum at Exh. B. In addition, Mr. Charles LaBarbera, Coordinator of Instructional Support, sent Plaintiff a follow-up letter on August 16, 1999. *See id.* at Exh. C.

4. In that motion, Plaintiff contemporaneously sought, by order to show cause, a temporary restraining order and a preliminary injunction.

espouses appear to be religious in nature as opposed to merely philosophical or scientific in nature." *See* Memorandum–Decision and Order, dated March 8, 2001, Dkt. No. 30, at 18.

Presently before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, Defendants move for a declaratory judgment declaring that New York Public Health Law § 2164(9) (the "genuine" and "sincere" religious belief exemption) is unconstitutional pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## III. DISCUSSION

### A. The Court has Jurisdiction to Hear this Case because Plaintiff's Complaint Raises Issues of Federal Law

 Defendants contend that this Court does not have jurisdiction over Plaintiff's claims because her complaint does not present a federal question. Defendants advance two arguments in support of this contention. First, Defendants argue that the First Amendment does not

require that States provide a religious exemption from immunization. Second, Defendants argue that the First Amendment does not require that States provide religious accommodations with respect to immunization statutes. Neither of these arguments is availing because jurisdiction is not dependent on whether Plaintiff can prove the merits of her complaint. Rather, Plaintiff need only state a federal issue in her well-pleaded complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). As stated, in the present case, Plaintiff has alleged a violation of her constitutional rights under the First and Fourteenth Amendments to the United States Constitution. Therefore, the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### B. The Constitutionality of New York Public Health Law § 2164(9) [5]

 Defendants contend that the statutory exemption to New York State's immunization requirement violates the Establishment Clause of the First Amendment to the United States Constitution. As stated, the New York State Legislature created an exemption from the immuniza-

---

5. As a threshold matter, Plaintiff contends that Defendants' motion for declaratory judgment is not timely and should therefore be denied. Plaintiff argues that a motion for declaratory judgment must be made as a compulsory counterclaim, pursuant to Rule 13(a) of the Federal Rules of Civil Procedure. Plaintiff is incorrect. Even where declaratory relief is not requested the courts may grant such relief where the pleading and proof show such to be appropriate. *See Nemitz v. Norfolk and Western Ry., Co.*, 23 Ohio Misc. 78, 309 F.Supp. 575, 585 (N.D.Ohio 1969) (citing *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964)) (other citation omitted). In *Katzenbach v. McClung*, the Supreme Court held that a court may grant declaratory relief where a party has not requested it if the court finds it necessary. *See Katzenbach*, 379 U.S. at 296, 85 S.Ct. 377. In addition, Rule 54(c) of the Federal Rules of

Civil Procedure permits a court to grant "the relief to which the party in whose favor [the judgment] is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed.R.Civ.P. 54(c). Rule 54(c) applies to any demand for relief, whether issued by a plaintiff or a defendant. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2662 (3d ed.1998) (noting that Rule 8(a) and Rule 54(c) of the Federal Rules of Civil Procedure interact so that in non-default cases "the judgment need not be limited in kind or amount by the demand"). Thus, a party may seek declaratory relief subsequent to the pleading stage of a civil action if such relief is merited.

Accordingly, the Court finds that it may grant Defendants' request for declaratory judgment if it finds the statute unconstitutional.

tion requirement in § 2164(9).[6] The statute provides that

> [t]his section shall not apply to children whose parent, parents, or guardian hold *genuine and sincere religious beliefs* which are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.

*See* N.Y. Pub. Health Law § 2164(9) (McKinney 2001) (emphasis added).[7]

The Establishment Clause provides that "Congress shall make no law respecting the establishment of religion." To avoid violating the Establishment Clause, a law must have (1) a secular purpose, (2) a primary effect that neither advances nor inhibits religion, and (3) must not produce excessive government entanglement with religion. *See Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Defendants argue that the religious exemption in New York Public Health Law § 2164(9) violates all three prongs of the Establishment Clause test. First, they argue that the statutory exemption has no secular purpose and is not facially neutral. Second, they contend that the primary effect of § 2164(9) is to advance participation in religious life or religion. Finally, Defendants argue that application of the religious exemption requires excessive entan-

glement of state and church. Accordingly, Defendants claim that the religious exemption violates the Establishment Clause; and they therefore seek a declaratory judgment that the religious exemption is unconstitutional.

It is well-settled that courts will presume that a law is constitutional. *See Borden's Farm Prods. Co., Inc. v. Baldwin,* 293 U.S. 194, 209, 55 S.Ct. 187, 79 L.Ed. 281 (1934). Thus, the District bears a heavy burden to show that the statute at issue is unconstitutional.

### 1. The Statutory Exemption Contained in § 2164(9) Has a Secular Purpose

First, Defendants argue that the religious exemption does not have a secular purpose and therefore does not satisfy the first prong of the *Lemon* test. As a preliminary matter, the Second Circuit has upheld religious exemptions. *See, e.g., Lewis v. Sobol,* 710 F.Supp. 506 (S.D.N.Y.1989). More recently, the Supreme Court has required that a statutory exemption for religious practices balances the two goals of not imposing a substantial burden on non-beneficiaries while permitting beneficiaries to act according to their religious beliefs. *See, e.g., Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 14–

---

**6.** An earlier version of § 2164(9) required the parent to be a "bona fide member of a recognized religious organization" to qualify for a religious exemption. However, in *Sherr v. Northport–East Northport Union Free Sch. Dist.,* 672 F.Supp. 81 (E.D.N.Y.1987), the court held that the statute violated both the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution. In response to the decision in *Sherr,* the New York State Legislature, in 1989, amended § 2164(9) to require only that a person maintain "genuine and sincere religious beliefs." *See Berg v. Glen Cove City Sch. Dist.,* 853 F.Supp. 651, 654–55 (E.D.N.Y. 1994).

**7.** In determining whether an individual qualifies for an exemption from the immunization requirement under § 2164(9), courts have utilized a two-prong analysis. The first prong involves an analysis as to whether the individual's beliefs are in fact religious in nature. If the court makes a determination that they are, it must then consider the genuineness and sincerity of those beliefs. *See Berg,* 853 F.Supp. at 655; *see also Farina v. Bd. of Educ. of City of N.Y.,* 116 F.Supp.2d 503, 507 (S.D.N.Y.2000) (explaining that a court must consider whether the plaintiff's beliefs were "genuinely and sincerely" held after finding that the purported beliefs are religious in nature).

15, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). Defendants argue that an exemption from vaccination imposes a substantial burden on non-beneficiaries because it exposes young school children to children who have not been vaccinated and therefore increases everyone's risk of infection. In addition, Defendants assert that the law imposes a financial burden on school districts because it forces school districts to determine whether an individual is eligible to receive a religious exemption from immunization.[8]

Defendants have misconstrued the "secular purpose" prong of the Establishment Clause test. The "secular purpose" inquiry is properly directed at whether the government is legislating in such a way as to abandon neutrality and promote a particular religious point of view. In the present case, the secular purpose of § 2164(9) is to allow children, whose parents have a "genuine and sincere religious belief" that prohibits them from having their children innoculated, attend school. The statutory exemption is sufficiently neutral to satisfy the secular purpose test because it does not favor one religion over another. Rather, it exempts all religious believers from immunization if their beliefs oppose it.

### 2. *The Statutory Exemption Contained in § 2164(9) Does not have the Primary Effect of Advancing or Inhibiting Religion*

In *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) the Court enhanced the second part of the Establishment Clause test—a court is required to ask (1) "whether the government acted with the purpose of advancing or inhibiting religion" and (2) "whether the aid has the effect of advancing or inhibiting religion." *Id.* at 222–23, 117 S.Ct. 1997.

Defendants argue that the statutory religious exemption improperly advances religion because its essential effect is to entitle those holding a religious belief against immunization to be exempted from immunization. For a law to violate the "effects prong" of the Establishment Clause inquiry, the government must have "advanced religion through its own activities and influences." *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 337, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987). The " ' 'establishment' of a religion connote[s] sponsorship, financial support, and active involvement of the sovereign in religious activity.' " *Id.* (quoting [*Walz* ], 397 U.S. at 668, 90 S.Ct. at 1411) (other citation omitted). The immunization exemption at issue does not confer financial benefits on those with religious beliefs, nor does it sponsor or support any religious organization. It merely permits anyone with "genuine" and "sincere" religious beliefs to express those beliefs or to live in conformity with those beliefs. Moreover, the exemption does not have the "effect" of advancing or inhibiting religion because it does not promote religious beliefs, nor does the law promote one religious group over any other.[9]

### 3. *Application of the Exemption Does Not Necessitate Excessive Entanglement of Church and State*

Subsumed in the "effects prong" inquiry is the question of whether the legislation

---

8. Defendants also point to New York Public Health Law § 2164's religious purpose, arguing that the law favors *any* religious belief against immunization against any non-religious belief against immunization.

9. The exemption excludes from immunization anyone with a "genuine" or "sincere" religious belief objecting to immunization.

at issue produces excessive government entanglement with religion. To determine whether entanglement is excessive, a court "must examine the character and purposes of the institutions that are benefitted." *Lemon,* 403 U.S. at 615, 91 S.Ct. 2105. A court then must look at the resulting relationship between the government and the religious authority. *See id.* If the program is apt to entangle the State in details of administration of religion, the entanglement is deemed excessive. *See id.*

In the present case, however, the Court finds that the statute does not directly subsidize or benefit religious organizations. In addition, the inquiry that the Board must undertake to determine whether the parents' beliefs are "genuine" or "sincere" does not require the school to assess the validity of the individual's beliefs. The relationship between the Board and the parents is not ongoing and does not require the Board to interfere in any way in the administration of religion. Accordingly, the Court finds that the statutory exemption does not require excessive governmental entanglement with religion.

## IV. CONCLUSION

The Court denies Defendants' motion for dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the Court finds that it has jurisdiction over Plaintiff's claims. In addition, the Court denies Defendants' motion for declaratory judgment and summary judgment. Accordingly, for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for dismissal of this action for lack of subject matter jurisdiction is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**