Martina CAVIEZEL and Andreas Schenk Caviezel, Individually and as parents and natural Guardians of CC, Plaintiffs,

v.

GREAT NECK PUBLIC SCHOOLS, a/k/a Great Neck Union Free School District; Debbie Shalom, in her capacity as Principal, Parkville School Early Childhood Center; Dr. Thomas P. Dolan, in his capacity as Superintendent of Schools, New York State Education Department; David Steiner, in his capacity as Commissioner of Education, Defendants.

No. 10–cv–652 (ADS)(WDW).

United States District Court, E.D. New York.

Sept. 24, 2010.

Patricia Finn, Attorney P.C., by Patricia Finn, Esq., Jonathan Matthew Victor, Esq., of Counsel, Piermont, NY, Attorneys for the plaintiffs.

Frazer & Feldman, LLP, by Joseph W. Carbonaro, Esq., of Counsel, Garden City, NY, Attorneys for the defendants Great Neck Public Schools, Debbie Shalom, and Thomas P. Dolan.

New York State Attorney General's Office by Assistant Attorney General Ralph Pernick, of Counsel, Mineola, NY, Attorneys for the defendants New York State Education Department and David Steiner.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs in this case seek a religious-based exemption from the New York State requirement that their child, CC, be immunized from certain communicable diseases before being admitted to public school. The plaintiffs originally sought a preliminary injunction granting this relief. After an evidentiary hearing, the Court on April 5, 2010 denied the plaintiffs' request. *Caviezel v. Great Neck Public Schools*, 701 F.Supp.2d 414 (E.D.N.Y.2010) ("*Caviezel I*"). Now, the Court addresses (1) two motions to dismiss, by two different groups of defendants, (2) a motion by one of those groups of defendants to strike the plaintiffs' jury demand, and (3) a motion by the plaintiffs to amend their complaint. The Court's rulings on these motions follow.

## I. BACKGROUND

The facts of this case are set forth more fully in the Court's previous order in this matter, *Caviezel I*. Familiarity with that decision is assumed.

The plaintiffs Martina Caviezel and Andreas Schenk Caviezel are the parents of minor child CC, who, at four years of age, is old enough to start preschool in the Great Neck Public School system. However, although the school year has now commenced, CC remains unregistered in spite of her age and her parents' desire that she attend school. This is because CC has not been immunized from certain communicable diseases, and New York State law requires that children undergo a course of immunizations before enrolling in public school. The plaintiffs assert that they have not vaccinated CC based on their religious beliefs, which they describe as "contrary to the practice of immunizing," and which provide that "immunizing [is] a sin, and [demonstrates] a lack of faith in G-d and His creations." (Compl., ¶ 14.) In this lawsuit, the plaintiffs request a religious-based exemption from New York's immunization requirement for CC.

The plaintiffs initially sought to register CC for preschool in the Great Neck Public Schools in October 2009. When the plaintiffs at that time indicated to the district that CC had not been vaccinated on religious grounds, the district directed the plaintiffs to complete a vaccination exemption request form. The form, which the plaintiffs allege was created by the New York Commissioner of Education, called for the plaintiffs to state their religious beliefs contrary to vaccination in their "own words." To comply with this request, the plaintiffs attached to the form a letter prepared by their attorney, Patricia Finn, Esq. The letter, which the plaintiffs included as an exhibit to their complaint, states in pertinent part:

> Our religious beliefs our deeply rooted in our spirituality and our cultural beliefs. We believe everything is sacred from the largest mountain to the smallest plant and animal. We believe our body is also sacred. A lesson can be found in all things and experiences and everything has a purpose including sickness and health. Our religion and spiritual beliefs are about honor, love and respect. Not only do we love, honor and respect our Creator and Mother Earth, but our bodies as well. Our religion is about being touch with our beings and everything around us. It is about knowing and understanding that we are part of everything, and everything is a part of us. We are all One.

(Compl., Ex. 1.) The plaintiffs submitted the completed form, with the attached letter, to the Great Neck Public Schools on October 29, 2009. On November 16, 2009, the Great Neck Public Schools denied an exemption for the plaintiffs, on the ground that the plaintiffs did not have a genuine and sincere religious objection to vaccination.

On February 16, 2010, the Caviezels filed the present case, alleging that they did have a genuine and sincere religious objection to vaccination. Based on this belief, the plaintiffs requested that the Court direct the Great Neck Public Schools to enroll CC in preschool without immunizations. The plaintiffs named as defendants the Great Neck Public Schools; Debbie Shalom, the principal of the school that CC would attend; Dr. Thomas Dolan, the superintendent of the Great Neck Public Schools (together with the Great Neck Public Schools and Debbie Shalom, the "District Defendants"); and the New York State Education Department and its commissioner David Steiner (the "State Defendants").

In their complaint, the plaintiffs assert against the State Defendants a single cause of action for violation of their Fourteenth Amendment right to counsel during administrative proceedings. According to the plaintiffs, the State Defendants drafted the exemption request form that the plaintiffs were asked to complete, and this form called for the plaintiffs to explain their religious beliefs in their "own words." The plaintiffs assert that this request violated their right to counsel because it "strongly inhibits the use of counsel in formulating applicants' religious objections to vaccines." (Compl., ¶ 35.)

Against the District Defendants, the plaintiffs assert an identical cause of action for violation of their Fourteenth Amendment right to counsel. In addition, the plaintiffs also assert causes of action for violation of (1) New York State law and (2) the First Amendment. The plaintiff's state law claim is based on New York State Public Health Law, Section 2164(9), which provides for an exemption from school vaccination requirements for holders of sincere, genuine religious objections to immunization. The plaintiff's First

Amendment claim is premised on the assertion that the District Defendants' denial of an exception for CC constitutes an impermissible burdening of their right to practice their religion.

Upon filing the present action, the plaintiffs also moved by order to show cause for a preliminary injunction directing the District Defendants to register CC for school without being vaccinated. On March 15, 2010, the Court held an evidentiary hearing on whether to grant this relief, and on April 5, 2010, the Court issued *Caviezel I,* denying any preliminary injunctive relief. In their opposition to the plaintiffs' request for injunctive relief, the State Defendants also moved to dismiss the cause of action against them for lack of standing. That motion remains pending. In addition, on April 22, 2010, the District Defendants likewise moved to dismiss all of the plaintiffs' claims against them, on grounds that the plaintiffs' claims were procedurally barred and otherwise inadequate.

On July 19, 2010, before the Court had ruled on either motion to dismiss, the plaintiffs filed a jury demand with the Court. On July 20, 2010, the District Defendants moved to strike this jury demand, on grounds that the plaintiffs were not entitled to a jury because they sought only injunctive relief. Rather than oppose this motion to strike, the plaintiffs moved on July 27, 2010 to amend their complaint to request money damages as well as injunctive relief. The plaintiffs do not seek to alter their allegations of fact in any way. All of the defendants oppose the plaintiffs' motion to amend.

## II. DISCUSSION

### A. As to the Plaintiffs' Motion to Amend and the District Defendants' Motion to Strike the Plaintiffs' Jury Demand

On July 19, 2010, more than three months after the Court denied the plain-

tiffs' request for preliminary injunctive relief in *Caviezel I,* the plaintiffs filed a jury demand. The next day, July 20, 2010, the District Defendants moved to strike the plaintiffs' jury demand, on the ground that parties seeking only injunctive or declaratory relief have no right to a jury trial. To date, the plaintiffs have filed no opposition to the District Defendants' motion to strike. Rather, on July 27, 2010, seven days after the District Defendants filed their motion to strike, the plaintiffs moved to amend their complaint to seek monetary damages. The money damages the plaintiffs seek include reimbursement for private school tuition for CC as a result of her exclusion from public school. The District Defendants oppose the plaintiffs' motion to amend, contending that (1) the amendment is sought in bad faith, (2) the plaintiffs' request for tuition reimbursement is futile, and (3) the amendment would unfairly prejudice the District Defendants.

■ Fed.R.Civ.P. 15(a) provides that after twenty-one days have elapsed from the filing of a responsive pleading or a motion to dismiss, a plaintiff must seek leave from the Court before amending his or her complaint. The rule also provides that "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). However, no leave to amend should be granted when amendment would be futile, would cause undue prejudice to the non-moving party, or is sought in bad faith. *See, e.g., Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir.2008).

Here, the plaintiffs' time to amend as of right has expired, and the District Defendants oppose the Court granting the plaintiffs leave to amend. The District Defendants primarily assert that the plaintiffs seek monetary damages solely so that they

may have a jury trial, and that therefore the plaintiffs are acting in bad faith and are thus not entitled to amendment. However, while it is possible that the plaintiffs have moved to amend for purely tactical reasons, the District Defendants ask the Court to conclude this from the timing of the motion alone. The Court declines to do so. The Court likewise finds unavailing the District Defendants' assertions regarding (1) the futility of the plaintiffs' money damages claims and (2) unfair prejudice to the District Defendants. To the extent that the plaintiffs should prevail on a Section 1983 claim for violation of their federal constitutional rights, they would be entitled to money damages which could include, if proven and warranted, payment of fees for alternative education. Similarly, the Court does not view the delay in notification to the District Defendants to work an unreasonable injustice on them. The Court therefore grants the plaintiffs' motion to amend their complaint to seek monetary damages.

However, as discussed below, the Court ultimately finds that the plaintiffs' underlying First Amendment and Fourteenth Amendment claims—asserted both in the original complaint and the amended complaint—are not valid. Therefore, regardless of whether the plaintiffs amend their complaint to seek monetary damages, the plaintiffs have asserted no valid substantive basis for those damages. Without a valid claim for monetary damages before the Court, there is no basis for the plaintiffs' jury demand. *See, e.g., NAACP v. Acusport Corp.,* 226 F.Supp.2d 391, 397 (E.D.N.Y.2002) (Weinstein, J.). Therefore, while the Court grants the plaintiffs' motion to amend, the Court nevertheless also grants the District Defendants' motion to strike the plaintiffs' jury demand.

The Court now turns to the defendants' motions to dismiss.

## B. Standard on a Motion to Dismiss

Under the now well-established *Twombly* standard, a complaint should be dismissed under Rule 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 572 F.3d 66 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

## C. As to the State Defendants' Motion to Dismiss

As noted above, the sole claim that the plaintiffs assert against the State Defendants is for violation of their Fourteenth Amendment right to have the use of counsel during administrative proceedings. The State Defendants contest the existence of this alleged right, but maintain

that either way, the plaintiffs have no standing to assert a claim against them because the plaintiffs experienced no cognizable harm as a result of the State Defendants' alleged actions. The plaintiffs contend that they have suffered harm, and also that they may sue to vindicate harm that will be caused to other individuals.

The United States Constitution requires that, generally, a person seeking to assert a claim in federal court must allege that the defendant's actions caused the plaintiff injury to a legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff who fails to allege this has no standing to assert a claim in court, even if the plaintiff alleges that the defendant's acts have harmed or will harm another person. *See, generally, id.*

Here, the plaintiffs allege that the exemption request form that they were asked to complete "discourages parents from seeking the advice of a lawyer when completing the form," by requesting that parents seeking an exemption express their religious beliefs "in their own words." (Compl., ¶ 16.) The plaintiffs seek to assert a claim against the State Defendants based on this form because, according to the plaintiffs, the State Defendants drafted and mandated the use of this form.

■ However, assuming that the State Defendants did draft and mandate the use of the form, and also assuming that individuals have a right to be represented by counsel in completing such a form, the plaintiffs here still have no standing to assert a claim against the State Defendants. This is because the plaintiffs do not allege that this form caused them any harm. Rather than be discouraged from employing counsel, the plaintiffs allege that they responded to the exemption form with a letter drafted *by their attorney.*

The plaintiffs nevertheless assert in their memorandum of law (although not in their complaint) that the exemption form made them "highly reluctant to use the document that their counsel had drafted for them." (Pl.'s Opp. to State Defs.' Mot. to Dis. at 7.) Even if this allegation were properly pleaded, it would be irrelevant. To the extent the form made them feel "highly reluctant" to use the attorney-drafted letter to respond to the form, the plaintiffs ultimately did use this letter, and any personal difficulty they faced in coming to this conclusion is not a recognizable harm in this context.

The plaintiffs attempt to resuscitate their standing to sue the State Defendants for violation of their right to counsel by claiming, alternatively, that the continued use of the form will harm the plaintiffs in the future, and that it will harm other individuals who seek an exemption. Neither argument is convincing. With respect to the future harm to themselves, the plaintiffs allege no facts that suggest that they will ever have to use the form again, or that if they did, that it would affect their use of counsel. As for harm to other exemption seekers, the plaintiffs have no standing to assert claims based on an injury to others not experienced by the plaintiffs. *See Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (requiring that a plaintiff experience an injury to himself to have standing to assert a relevant claim).

As the plaintiffs lack standing to assert a claim against the State Defendants, the Court grants the State Defendants' motion to dismiss in its entirety.

**D. As to the District Defendants' Motion to Dismiss**

The plaintiffs assert against the District Defendants causes of action for (1) violation of the plaintiffs' right to counsel, (2) violation of New York Public Health Law

Section 2164(9), and (3) violation of the plaintiffs' First Amendment right to free exercise of religion. The District Defendants move to dismiss all three causes of action.

### 1. Right to Counsel

As with the State Defendants, the plaintiffs assert against the District Defendants a claim for violation of the plaintiffs' right to counsel. For the same reasons discussed with respect to the State Defendants, the Court now dismisses the plaintiff's right to counsel claim against the District Defendants. The plaintiffs have alleged no facts showing that they have sustained, or imminently will sustain, any injury related to a denial of the right to counsel. The District Defendants' motion to dismiss this claim is therefore granted.

### 2. Violation of New York Public Health Law, Section 2164(9)

The plaintiffs' second cause of action against the District Defendants is for violation of Section 2164(9) of the New York Public Health Law, which provides religious objectors with an exemption to required school inoculations. As discussed in *Caviezel I*, Section 2164(7) of the New York Public Health Law requires students to receive immunizations for several communicable diseases prior to enrolling in public school, and states in pertinent part:

> 7. (a) No principal, teacher, owner or person in charge of a school shall permit any child to be admitted to such school, or to attend such school, in excess of fourteen days, without the certificate provided for in subdivision five of this section or some other acceptable evidence of the child's immunization against poliomyelitis, mumps, measles, diphtheria, rubella, varicella, hepatitis B, pertussis, tetanus, and, where applicable, Haemophilus influenzae type b(Hib)

and pneumococcal disease; provided, however, such fourteen day period may be extended to not more than thirty days for an individual student by the appropriate principal, teacher, owner or other person in charge where such student is transferring from out-of-state or from another country and can show a good faith effort to get the necessary certification or other evidence of immunization.

Section 2164(9) of the New York Public Health Law provides an exception to this requirement for students whose parents object to these vaccinations on religious grounds, and reads:

> 9. [Section 2164] shall not apply to children whose parent, parents, or guardian hold genuine and sincere religious beliefs which are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.

The plaintiffs allege that they have a genuine, sincere religious objection to the vaccination of CC, and that this entitles CC to an exemption to the state's vaccination requirements. The District Defendants do not challenge the substantive validity of this pleading, but rather move to dismiss this cause of action on procedural grounds. Specifically, the District Defendants assert that the plaintiffs' claim is barred by (1) the plaintiffs' failure to timely file a notice of claim with the Great Neck School District, and (2) the plaintiffs' failure to exhaust their administrative remedies. The plaintiffs contend that they were not obligated to do either of these things.

### a. Notice of Claim

The District Defendants rely on Section 3813(1) of New York Education Law for their assertion that the plaintiffs' state law claim is barred by their failure to file a

timely notice of claim. Section 3813(1) provides in pertinent part:

1. No action or special proceeding, for any cause whatever ... involving the rights or interests of any district ... shall be prosecuted or maintained against any school district ... unless it shall appear by and as an allegation in the complaint ... that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment....

Here, the parties agree that the plaintiffs' cause of action accrued on November 16, 2009, and that the plaintiffs did not file a notice of claim with the District Defendants until one hundred nine days later, on March 5, 2010. As Section 3813(1) requires filing of a notice of claim within ninety days of the accrual of a cause of action, the plaintiff's notice of claim was not timely.

■ The plaintiffs do not deny that, to the extent Section 3813(1) would apply, their notice of claim was untimely. Although the plaintiffs assert that Section 3813(1) is inapplicable to this case, in the alternative they also rely on a subsequent subdivision of Section 3813 of the New York State Education Law, Section 3813(2–a), which grants the Court discretion to extend the period for filing a notice of claim against a school district. Section 3831(2–a) provides in pertinent part:

Upon application, the court, in its discretion, may extend the time to serve a notice of claim. The extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school. In determining whether to grant the extension, the court shall consider, in particular, whether the district or school or its attorney or its insurance carrier or other agent acquired actual knowledge of the essential facts constituting the claim within the time specified in [Section 3813(1) ] or within a reasonable time thereafter.

Pursuant to this provision, the plaintiffs now petition the Court to extend their time to file a notice of claim. In this regard, it is significant that the plaintiffs' notice was filed only shortly after the notice period expired, and that the District Defendants were aware of the operative facts underlying the plaintiffs' claim—that is, they were aware of the denial of exemption—literally before the plaintiffs were. In addition, the Court is aware of no unreasonable harm to the District Defendants that would be caused by extending the plaintiffs' time to file a notice of claim. Thus, the Court finds that, assuming that Section 3813(1) applies here, an extension of time is appropriate in this case. The Court therefore extends the plaintiffs' time to file a notice of claim with the District Defendants *nunc pro tunc* to March 5, 2010, when the plaintiffs filed their notice of claim.

#### b. Exhaustion of Administrative Remedies

The State Defendants also assert that the plaintiffs may not proceed on their state law claim because they failed to appeal the denial of their religious exemption from vaccination to the New York Commissioner of Education. As discussed in *Caviezel I*, it is the general rule in New York state courts that individuals challenging an administrative determination must exhaust their administrative remedies before pursuing relief in a court of law. *See, e.g., Mirenberg v. Lynbrook Union Free School Dist. Bd. of Educ.*, 63 A.D.3d 943,

943–44, 881 N.Y.S.2d 159 (2d Dep't 2009). In this case, both New York's Public Health Law and its Education Law provide that a party who is denied a religious exemption from school immunization may appeal that decision to the New York State Commissioner of Education. Specifically, Section 2164(7) of the New York Public Health Law provides in part:

> (b) A parent, a guardian or any other person in parental relationship to a child denied school entrance or attendance may appeal by petition to the commissioner of education in accordance with the provisions of section three hundred ten of the education law.

Likewise, Section 310 of the New York Education Law provides:

> Any party conceiving himself aggrieved may appeal by petition to the commissioner of education who is hereby authorized and required to examine and decide the same; and the commissioner of education may also institute such proceedings as are authorized under this article. The petition may be made in consequence of any action ... [b]y a principal, teacher, owner or other person in charge of any school in denying a child admission to, or continued attendance at, such school for lack of proof of required immunizations in accordance with section twenty-one hundred sixty-four of the public health law.

The parties here agree that the plaintiffs had the opportunity to appeal the denial of their exemption to the New York State Commissioner of Education, but declined to do so. However, the plaintiffs maintain that exhaustion of this remedy is not obligatory. The District Defendants disagree.

There appears to be some discrepancy among New York courts as to whether a district's denial of a religious exemption to vaccination must be appealed to the New York State Commissioner of Education be-fore a plaintiff may proceed in court. In *Bowden v. Iona Grammar School*, 284 A.D.2d 357, 358, 726 N.Y.S.2d 685 (2d Dep't 2001), the Appellate Division, Second Department explicitly held that a failure to appeal a denial of religious exemption to the Commissioner did not bar a suit in court, because "[a]n appeal to the Commissioner [in this context] is not mandatory and is not the exclusive means of review." On the other hand, the New York Court of Appeals has held that "[i]t is hornbook law that one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law." *Watergate II Apartments v. Buffalo Sewer Authority*, 46 N.Y.2d 52, 57, 412 N.Y.S.2d 821, 385 N.E.2d 560 (N.Y.1978).

 Ultimately, the Court need not resolve this issue, because even if exhaustion of administrative remedies would generally be required here, an exception to the rule applies. Namely, the New York Court of Appeals has held that exhaustion of administrative remedies is not necessary where its "pursuit would cause irreparable injury." *Id.* Here, the school year for which the plaintiffs sought to enroll CC has already started, and CC remains excluded from public school on the basis of her vaccination status. Should the plaintiffs prevail on their claim at trial, the time that CC was excluded from public school will not be readily reparable. Thus, the Court finds that, assuming the plaintiffs were obligated to exhaust their administrative remedies with the Commissioner, it is appropriate in this situation to grant an exception to this rule.

Finding that the plaintiffs' state law claim is not barred by any procedural deficiencies, the Court denies the District Defendants' motion to dismiss the plaintiff's New York Public Health Law claim.

By way of addendum, the Court notes that the section of the plaintiffs' complaint entitled "Count Two: Violation of the New York State Public Health Law Section 2164(9)" includes language to the effect that the defendants' denial of the plaintiffs' Section 2164(9) exemption violated the plaintiffs' "freedom of religion, Due Process and Equal Protection" rights. (Compl., ¶ 32.) The Court addresses below whether the denial of an exemption from mandatory vaccination violates the plaintiffs' First Amendment free exercise rights. However, to the extent that the plaintiffs seek to assert constitutional claims against the defendants based on theories of violation of (1) the First Amendment establishment clause, (2) the Fourteenth Amendment due process clause, or (3) the Fourteenth Amendment equal protection clause, the Court now finds that the plaintiffs have asserted no facts that support any of these claims. That is, the plaintiffs have not asserted any facts showing that the defendants favored any particular religion over another, that the plaintiffs were denied any constitutionally mandated process when they were denied an exemption pursuant to state law, or that they are part of any protected class. Thus, to the extent the plaintiffs seek to assert these constitutional claims against any of the defendants, the Court now dismisses them.

### 3. Violation of the First Amendment

The plaintiffs' third claim against the District Defendants is for violation of their First Amendment right to free exercise of religion. The District Defendants seek dismissal of this claim based on both (1) the doctrine of constitutional avoidance, and (2) the assertion that no constitutional right to religious exemption from vaccination exists.

First, with respect to the issue of constitutional avoidance, it is true that federal courts endeavor to avoid deciding constitutional questions whenever a case or controversy may be decided on other grounds. *See, e.g., Clinton v. Jones,* 520 U.S. 681, 690, fn. 11, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable." (internal quotations and citations omitted)); *Allstate Ins. Co. v. Serio,* 261 F.3d 143 (2d Cir.2001) ("It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions."). However, here, the plaintiffs' only basis for the monetary relief they seek is constitutional. Thus, while the plaintiffs' state law claim may determine whether the plaintiffs are entitled to injunctive relief, the Court must nevertheless address whether the plaintiffs' constitutional claim entitles them to monetary damages. As such, the constitutional questions presently before the Court cannot be avoided.

As to the substance of the plaintiffs' constitutional claim, the First Amendment of the federal constitution provides in part: "Congress shall make no law prohibiting the free exercise [of religion]." This prohibition applies to the states though Fourteenth Amendment incorporation. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). In addition, 42 U.S.C. § 1983 provides that individuals may seek money damages from governmental actors who violate those individuals' federal statutory or constitutional rights. Here, the plaintiffs assert that the District Defendants violated their First Amendment free exercise right by refusing to grant CC an exemption from New York State's school immunization requirements, and pursuant to Section 1983,

they seek monetary damages in compensation for this alleged violation. The District Defendants have moved to dismiss this claim by the plaintiffs, primarily on grounds that the First Amendment guarantees religious objectors no right to exemption from mandatory vaccination.

Neither the United States Supreme Court nor the Court of Appeals for the Second Circuit has directly addressed whether a religious objector is constitutionally exempt from a program of mandatory vaccination. However, the United States Supreme Court has strongly suggested that no such exemption exists. The oldest case on the issue is *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905), in which the Court upheld a Massachusetts law requiring all local residents to be vaccinated for smallpox. In so holding, the *Jacobson* Court cited favorably to a decision from the New York Court of Appeals that similarly upheld a law requiring students to be inoculated for smallpox before being admitted to school. *Id.* at 35, 25 S.Ct. 358 (citing *Viemeister v. White*, 179 N.Y. 235, 72 N.E. 97, 1 N.Y. Ann. Cas. 334 (1904)). The Court recognized that there was a public debate at the time regarding the efficacy of the smallpox vaccine, but held that it was within the state legislature's realm to determine whether requiring vaccination was expedient. *Id.* at 27, 25 S.Ct. 358. However, *Jacobson* did not address whether a religious objector could be exempt from mandatory vaccinations.

Following *Jacobson*, the next significant discussion of the issue by the Supreme Court was in *Prince v. Massachusetts*, 321 U.S. 158, 166–67, 64 S.Ct. 438, 88 L.Ed. 645 (1944). *Prince* upheld the application of a child labor law to a child selling religious literature, even though the child's mother explained that it was part of the family's religious practice to do so. *Id.*

While the holding in *Prince* was unrelated to school inoculations, the Court stated in passing that "the family itself is not beyond regulation in the public interest, as against a claim of religious liberty.... *The right to practice religion freely does not include liberty to expose the community or the child to communicable disease* or the latter to ill health or death." *Id.* at 166, 64 S.Ct. 438 (emphasis added) (citing *People v. Pierson*, 176 N.Y. 201, 68 N.E. 243 (N.Y.1903) (upholding the conviction of parents who refused on religious grounds to seek medical attention for an infant with whooping cough)).

Although the language in *Prince* strongly suggests that a state need not exempt individuals from inoculation based on religious objections, this admonition was dicta, and the Supreme Court has not directly addressed the issue since that time. Nevertheless, the Court has mentioned religious exemption from mandatory vaccination after that at least twice, each time indicating that no religious exemption exists. Thus, in *Wisconsin v. Yoder*, 406 U.S. 205, 230, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), a case granting Amish children an exemption from Wisconsin's compulsory education law, the Court noted that "[t]his case, of course, is not one in which any harm to the physical or mental health of the child or to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred." The Court then cited to *Jacobson*, 197 U.S. at 11, 25 S.Ct. 358, by counterexample, indicating that religious-based exemptions from compulsory vaccinations presumably would be granted less readily than religious-based exemptions from compulsory education. Then, in *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 889, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Court named "compulsory vaccination laws" in a list of laws that the Court believed should not be required to

be justified by a "compelling state interest", even if it adversely affected the practice of religion.

As for the Second Circuit, an appellate panel declined to address the First Amendment issue in *Mason v. General Brown Cent. School Dist.*, 851 F.2d 47, 54 (2d Cir.1988), holding that the plaintiffs' failure to establish a religious basis for their objections to vaccination permitted the Court to avoid the constitutional question. Nevertheless, several district courts have suggested or explicitly held that no constitutional right to a religious exemption exists. In one of this District's leading and most thoughtful opinions on this issue, Judge Wexler described New York's statutory exception from vaccination requirements as "go[ing] beyond what the Supreme Court has declared the First Amendment to require." *Sherr v. Northport–East Northport Union Free School Dist.*, 672 F.Supp. 81, 88 (E.D.N.Y.1987). Thereafter, two Federal District judges in Arkansas and one in West Virginia held that the First Amendment provides no right to a religious exemption from mandatory school immunizations. *See Workman v. Mingo County Schools*, 667 F.Supp.2d 679, 689 (S.D.W.Va.2009); *Boone v. Boozman*, 217 F.Supp.2d 938, 952–53 (E.D.Ark. 2002) ("The constitutionally-protected free exercise of religion does not excuse an individual from compulsory immunization; in this instance, the right to free exercise of religion and parental rights are subordinated to society's interest in protecting against the spread of disease."); *McCarthy v. Boozman*, 212 F.Supp.2d 945, 949–50 (W.D.Ark.2002). In each of these cases, the court primarily relied on the same line of Supreme Court cases discussed above.

On the other hand, the Court is aware of at least two decisions from District Courts within the Second Circuit where judges implicitly held that the First Amendment does provide a religious exemption to mandatory inoculation. *See In re Moses v. Bayport Bluepoint Union Free School Dist.*, 05–cv–3808, 2007 WL 526610, *6 (E.D.N.Y.2007); *Lewis v. Sobol*, 710 F.Supp. 506, 518 (S.D.N.Y.1989). However, while each case provides for a First Amendment exemption to mandatory immunization, neither case discusses whether the First Amendment in fact provides this right, nor does either decision mention any of the relevant case law from the Supreme Court. Moreover, the Court is aware of no federal court that, after addressing the relevant Supreme Court opinions, has explicitly held that the First Amendment does provide a religious exemption from mandatory inoculation.

Nevertheless, the plaintiffs assert that, based on the Supreme Court's holding in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), this Court should apply strict scrutiny to New York's immunization requirement, and find that there is no compelling state interest that justifies the law. Under the strict scrutiny analysis, a constitutionally valid law "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.* at 531–32, 113 S.Ct. 2217 However, the Court in *Lukumi Babalu* explicitly stated that "our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531, 113 S.Ct. 2217. Here, unlike in *Lukumi Babalu*, there is no indication that the law at issue either does or was intended to affect any religious group disproportionately. Thus, being "neutral and of general applicability", New York's mandatory school inoculation program need not be justified by a compelling government interest. *Id.; see,*

also, Boone, 217 F.Supp.2d at 953 ("Because the immunization statute is a neutral law of general applicability, heightened scrutiny is not required even though compulsory immunization may burden plaintiff's right to free exercise.")

The plaintiffs also argue that *Jacobson,* the Supreme Court case that originally held that mandatory vaccination was constitutional, is limited in its holding to the smallpox vaccine, and does not provide that any other vaccination is constitutionally justified. (Pl.'s Opp. to District Defs.' Mot. Dis. at 9–10.) However, this argument is belied by the Supreme Court's holding in *Zucht v. King,* 260 U.S. 174, 175, 43 S.Ct. 24, 67 L.Ed. 194 (1922), which upheld a New York statute requiring vaccination for school attendance, and which made no reference to smallpox or any other individual disease. Similarly, the plaintiffs' suggestion that the vaccines that are now required for school attendance are "sometimes insufficiently tested", (Pl.'s Opp. to District Defs.' Mot. Dis. at 10), is also inapposite, as the plaintiffs allege that they oppose *all* vaccinations, not just those that are "insufficiently tested." Finally, the plaintiffs contend that *Jacobson* is "bad law," and request that this Court "overrul[e]" it as unconstitutional. (*Id.*) Obviously, this the Court cannot do.

■ In light of the Supreme Court's direction in this area of law, and finding the District Court opinions disfavoring a First Amendment exception to mandatory vaccination laws to be persuasive, the Court finds that the free exercise clause of the First Amendment does not provide a right for religious objectors to be exempt from New York's compulsory inoculation law. The plaintiff's First Amendment claim is therefore dismissed.

The Court notes that the only remaining cause of action in this case is based on New York State law, and that there is no diversity jurisdiction here. However, in view of the time sensitivity of this case, the Court elects to continue to exercise its pendant jurisdiction over the plaintiff's state law claim. *See, e.g., Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996) ("[a] district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction"); 28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiffs' motion to amend is granted; and it is further

**ORDERED** that the State Defendants' motion to dismiss is granted; and it is further

**ORDERED** that the District Defendants' motion to dismiss the plaintiffs' federal constitutional claims is granted; and it is further

**ORDERED** that the District Defendants' motion to dismiss the plaintiffs' state law claim is denied; and it is further

**ORDERED** that the District Defendants' motion to strike the plaintiffs' jury demand is granted; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the caption of this case to read as follows:

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

——————————— X

MARTINA CAVIEZEL AND ANDREAS SCHENK CAVIEZEL, Individually and as parents and natural Guardians of CC, Plaintiffs,

-against-

GREAT NECK PUBLIC SCHOOLS, a/k/a GREAT NECK UNION FREE SCHOOL DISTRICT; DEBBIE SHA-LOM, in her capacity as Principal, Parkville School Early Childhood Center; and DR. THOMAS P. DOLAN, in his capacity as Superintendent of Schools, Defendants.

───────────────── X